UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANA KAPPOUTA, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>VALIANT INTEGRATED SERVICES, LLC, a Virginia limited liability company, and THE ELECTRONIC ON-RAMP, INC., a Maryland corporation,<br><br>                              Defendants. | Case No.: 20-CV-1501 TWR (BGS)<br><br>**ORDER GRANTING DEFENDANT VALIANT INTEGRATED SERVICES, LLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>(ECF No. 7) |

Presently before the Court is Defendant Valiant Integrated Services LLC's ("Valiant") Motion to Dismiss Pursuant to FRCP 12(b)(6) ("Mot.," ECF No. 7), as well as Plaintiff Sana Kappouta's Opposition to ("Opp'n," ECF No. 15), and Valiant's Reply in Support of ("Reply," ECF No. 16) the Motion.  Having carefully considered the Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 7) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint.

/ / /

/ / /

/ / /

## BACKGROUND[1]

In February, 2017, Plaintiff Sana Kappouta ("Ms. Kappouta") began work as a linguist at the United States Baghdad Embassy Compound ("Embassy"). (Compl. ¶ 2.) There, she reported directly to Valiant managers who "supervised, directed, and controlled the terms of Plaintiff's employment" pursuant to Valiant's Department of Defense ("DoD") contract. (*Id.* ¶¶ 2, 21.)

On December 7, 2017, Plaintiff claims Sarah Maher, a co-worker, shoved past her and nearly knocked her down, but caused no injuries. (*Id.* ¶ 25.) The incident occurred after-hours at the Embassy's bar. (*Id.* ¶ 38.) Ms. Kappouta immediately reported the incident to her manager who asked Plaintiff not to report the shove saying, "don't make any problems, she [Maher] is drunk." (*Id.* ¶¶ 26–27.) The next morning and on December 12, 2017, Plaintiff provided statements to Regional Security Officers ("RSO") "just for the records and not [for purposes of filing] a report." (*Id.* ¶¶ 28–33.)

On January 28, 2018, Valiant tried transferring Ms. Kappouta to Basra, Iraq. (*Id.* ¶ 49.) Plaintiff refused and requested resignation papers but later changed her mind. (*Id.* ¶ 56; Report at 5–6, 16.) Defendant declined to reinstate Plaintiff and terminated her employment for "refusing the transfer to Basra, threatening to resign, and for jumping the chain of command." (Report at 6, 15.)

Ms. Kappouta filed a reprisal claim with the DoD Office of the Inspector General ("OIG") under, and as directed by, 10 U.S.C.A. § 2409(c), also known as the Defense Contractor Whistleblower Protection Act ("DCWPA" or "the Act")[2]. (Compl. ¶ 66.) On October 15, 2019, the DoD OIG provided Plaintiff with its Report, (*id.* ¶ 69; *see generally* Report), which recommended "that the Secretary of the Army direct U.S. Army officials

---

[1]   For the purposes of this Motion to Dismiss, the allegations in Plaintiff's Complaint (ECF No. 1) are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (a court must "accept all material allegations of fact as true" when ruling on a motion to dismiss).

[2]   Plaintiff refers to 10 U.S.C. § 2409 as the National Defense Authorization Act ("NDAA"), (Compl. ¶ 12), but Section 2409 is more correctly referred to as the DCWPA. *See United States ex rel. Cody v. Mantech Int'l Corp.*, 207 F. Supp. 3d 610, 612 n.1 (E.D. Va. 2016) (explaining the NDAA amended the DCWPA).

2

to order [Valiant] to take affirmative action." (Report at 2.) According to the Docket, the Army and Valiant took no further action in response to the Report.[3]

On August 4, 2020, Plaintiff filed this action against Valiant and The Electronic On-Ramp, Inc. alleging a cause of action for retaliation under 10 U.S.C. § 2409, claiming that the reassignment and termination were retaliation for her reporting the shove. (ECF No. 1.) On September 8, 2020, Valiant filed the pending Motion to Dismiss, (ECF No. 7), following which this action was transferred to the undersigned. (*See generally* ECF No. 11.)

## LEGAL STANDARD

### A. Federal Rules of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id*. at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a]

---

[3]  "If the head of an executive agency . . . has not issued an order within 210 days after the submission of a complaint under subsection . . . the complainant shall be deemed to have exhausted all administrative remedies." 10 U.S.C. § 2409(c)(2).

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id*. (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

**B.     The Defense Contractor Whistleblower Protection Act**

Generally, federal whistleblower protection statutes aim to uncover serious fraud against the government or critical health and safety violations by encouraging those with firsthand knowledge to come forward. *See e.g.*, *Moore v. California Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 846 (9th Cir. 2002) (finding "[t]he False Claims Act is aimed at fraud by government contractors" and applying the same elements as 10 U.S.C.A § 2409 claims); *see also Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) (same); *Bricker v. Rockwell Int'l Corp.*, 22 F.3d 871, 874 (9th Cir. 1993) (calling the Energy Reorganization Act of 1972 a "statutory remedial scheme for workers who expose health and safety violations at nuclear facilities"). As noted in the legislative record

of the Whistleblowing Protection Act: "[w]hat is needed is a means to protect the Pentagon employee who discloses billions of dollars in cost overruns, the GSA employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain nuclear plants." *Frederick v. Dep't of Just*., 73 F.3d 349, 353 (Fed. Cir. 1996), supplemented, No. 95–3194, 1996 WL 293120 (Fed. Cir. May 22, 1996) (citing S.REP. NO. 95–969, 95th Cong., 2d Sess. 8 (1978), *reprinted* in 1978 U.S.C.C.A.N. 2730–31).

The Defense Contractor Whistleblower Act under 10 U.S.C.A. § 2409 expanded whistleblower protection traditionally reserved for government employees to DoD and NASA contractor's employees by prohibiting retaliation against those who report certain types protected information. *See Lillie v. ManTech Int'l. Corp*., 837 F. App'x 455, 457–58 (9th Cir. 2020), *aff'g* No. 217CV02538CASSSX, 2019 WL 3387732 (C.D. Cal. July 26, 2019); *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 Fed. App. 166, 178 (4th Cir. 2018) (argued but unpublished), *aff'g* 207 F. Supp. 3d 610, 621 (E.D. Va. 2016).  To be designated a protected activity, or disclosure, an employee must report what he or she reasonable believes is:

> information that the employee reasonably believes is evidence of . . . [g]ross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract . . . [or] a substantial and specific danger to public health or safety.

10 U.S.C. § 2409(a)(1).  In ascertaining reasonability, a whistleblowing disclosure is protected if "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions . . . evidence [a protected activity]." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 890 (9th Cir. 2004) (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) for Whistleblowing Protection Act, 5 U.S.C.A. § 2302).  Thus, a contractor's employee who discloses to his or her manager information he "reasonably believes is evidence" of "a violation of law, rule, or regulation related to a [DoD] contract" cannot be "discharged,

demoted, or otherwise discriminated against as a reprisal for disclosing" protected activities. 10 U.S.C.A § 2409(a).

To establish a prima facie case of unlawful retaliation, a whistleblower plaintiff must show that: (1) she reasonably believed she engaged in *protected activity*; (2) her employer knew or was reasonably on notice that she was engaged in *protected activity*; and (3) her employer took adverse action against her as a result of the *protected activity*. *See Lillie*, 837 F. App'x at 457–58; *Cody*, 207 F. Supp. 3d at 621; *Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 193 (4th Cir.) (*cert. denied*, 141 S. Ct. 369, (2020)).

## ANALYSIS

Plaintiff's Complaint alleges a single, unlawful retaliation violation stemming from her reporting of a colleague's after-hours shove, which she claims is a protected activity under the § 2409. (*See* Compl. ¶¶ 65–69.) Valiant filed this Motion to Dismiss under FRCP 12(b)(6), claiming Plaintiff failed to reasonably allege any of the three elements under section 2409. For Plaintiff's claim to survive this Motion, Plaintiff must allege facts plausibly showing that she reasonably believed she engaged in a *protected disclosure*, Defendant was on notice of the *disclosure*, and, because of the *disclosure*, she was subjected to an adverse employment action. *See Lillie*, 837 F. App'x at 457; *Greer*, 808 F. App'x at 193. Mindful that each element requires a privileged disclosure, the Court first addresses whether Plaintiff ha plausibly met this burden.

## I.   The DoD OIG's Report is Part of the Pleadings but Limited Under *Iqbal*.

Plaintiff argues the Complaint's attached Report should be considered part of the pleading and accepted as true for the purposes of this Motion—specifically, the Report's findings that Plaintiff made six "protected disclosures" and that Valiant acted in reprisal for those disclosures. (Opp'n at 8, 13.) Kappouta urges the Court to incorporate by reference, (Compl. ¶ 69), or judicially notice, (ECF No. 14), the Report and its contents. Defendant highlights the expressly nonbinding, conclusory nature of the Report and argues that, under step one of *Iqbal*, the Court must distinguish facts from conclusions and thus reject the Report's "protected disclosure" labels. (Reply at 3–4.)

The scope of review on a motion to dismiss for failure to state a claim is generally limited to the contents of the complaint, *see Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1141 n.5 (9th Cir. 2003), a court may also consider certain materials without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).   The two exceptions are "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007); *see also Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub mon*, *Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

### A.   *Incorporation by Reference*

Rule 10(c) of the Federal Rules of Civil Procedure permits an entire exhibit to be incorporated by reference as "part of the pleading for all purposes" when "the plaintiff refers extensively to the document, or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (internal quotation marks and citation omitted).   To qualify as "extensively referenced," the complaint must cite the document more than once or quote from it at length. *Ritchie*, 342 F.3d at 1102–04.   However, while "the mere mention of the existence of a document is insufficient to incorporate [by reference]," a document not referenced at all may nonetheless be incorporated if the plaintiff's claims necessarily depend on it.   *Khoja*, 899 F.3d at 1007 (incorporating an official, administrative report referenced "several times" in the complaint); *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (affirming the incorporation of materials that the complaint relied upon but did not reference at all).

Here, the attached Report may be incorporated by reference because Plaintiff's Complaint cites and quotes it at length while relying heavily on its contents in forming the basis of her claim—namely in establishing the protected disclosures.   (*See generally* Compl.)   Defendant's Motion also utilizes facts within the Report.   (*See* ECF No. 7-1 at 2–3, 7, 9).   Under the Act, the Report may also be incorporated because it is "[a]n Inspector General determination . . . admissible in evidence in any de novo action at law or equity

brought pursuant to [the Act]." 10 U.S.C. § 2409(c)(3). However, while admissible, the Report's findings are nonbinding because courts remain "the final authorities on issues of statutory construction" and "must reject administrative constructions of [a] statute . . . that are inconsistent with the statutory mandate." *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 503 U.S. 407, 417 (1992). "If the agency interpretation is not in conflict with the plain language of the statute, deference is due," *id.*, but, as addressed below, the Report's opinions conflict with the plain language of the statute.

Further, because an entire document incorporated by reference becomes "a part of the pleadings for all purposes," *Khoja*, 899 F.3d at 1002, the Court is bound by *Iqbal* to separate fact from conclusion.[4]   Unlike *Khoja*, where the plaintiff relied on an official report's undisputed historical facts, Plaintiff relies on DoD Office of Inspector General's interpretation of facts which amount to conclusions of law.[5]   *Id.* at 1007. Fittingly, Plaintiff also refers to the determinations as "conclusions shared by the DoD and Plaintiff." (Opp'n at 13.) Thus, the Court incorporates by reference the entire report but only its *facts* may be construed in light most favorable to the Plaintiff—which excludes all six "protected disclosure" conclusions.

### B.   Judicial Notice

Also before the Court is Plaintiff's separate Request for Judicial Notice of the Report (ECF No. 14), specifically the Report's findings that Ms. Kappouta made six protected disclosures. (*Id.* at 2.) Defendant admits that judicial notice is appropriate for the existence of the Report but not the truth of the matters therein. (Reply at 2.)

Under Rule 201 of the Federal Rules of Evidence: "[t]he court may judicially notice a fact that is not subject to reasonable dispute," by the court's own discretion or upon a

---

[4]   *See Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions . . . will not do'."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (finding the court need not "accept as true a legal conclusion couched as a factual allegation").

[5]   Plaintiff expressly relies on six "protected disclosures under 10 U.S.C. 2409" labels. (Report at 23.) For four disclosures, the investigators stated, "[Plaintiff] reasonably believed to evidence [a simple] assault; a violation of law . . . related to the DoD contract" and was therefore protected. (*Id.*) The final two disclosures concerned discussions of whistleblowing rights and retaliation. (*Id.* at 26–27.)

party's request, when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[6]  "Judicial notice is appropriate for records and 'reports of administrative bodies.'"  *United States v. 14.02 Acres of Land More or Less in Fresno Cty.,* 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir. 1954) but noting the Court correctly noticed background information and did not to settle factual disputes).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja,* 899 F.3d at 999; *see e.g., Fed. Deposit Ins. Corp. v. Boggu*s, No. 2:13-CV-00162-WCO, 2014 WL 12479645, at *2 (N.D. Ga. Aug. 25, 2014) (declining to notice an OIG Report's "hotly contested" facts like whether the plaintiff was "in substantial compliance with laws and regulations," and reasoning that "just because the OIG Report contains [a] statement . . . does not make it true"); *County of San Miguel v. Kempthorne,* 587 F.Supp.2d 64, 78 (D.D.C. 2008) (refusing to take judicial notice of Inspector General's report where the "Court knows nothing about the investigative process which led to the report's conclusions"); *Michelle v. California Dep't of Corr. & Rehab.,* No. 118CV01743NONEJLTPC, 2021 WL 1516401, at *3–4 (E.D. Cal. Apr. 16, 2021) (refusing to recognize "selective and conclusory statements" regarding "opinions" of healthcare providers because the facts cannot be "accurately and readily determined from the documents").

Here, the Court has the discretion to judicially notice specific, reasonably undisputed facts within the Report.  However, Plaintiff asks the Court to notice nonbinding, conclusory statements made within a recommendation the Army did not act on and as part of an investigation that the Court has limited knowledge of.  (ECF No. 14 at 2.)  As such,

---

[6]     Rule 201 "was intended to obviate the need for formal fact-finding as to certain facts that are undisputed and easily verified."  *Walker v. Woodford,* 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006), *aff'd in part,* 393 F. App'x 513 (9th Cir. 2010); *see also Melong v. Micronesian Claims Comm.,* 643 F.2d 10, 12 n. 5 (D.C. Cir. 1980) (judicial notice under Rule 201 is designed for judicial recognition of scientific or historical fact without resort to cumbersome methods of proof).  In other words, "the fact must be one that only an unreasonable person would insist on disputing."  *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994).

Plaintiff's requests must be denied because, as discussed below, the disclosures are not reasonably undisputed facts that can be accurately and readily determined; rather, the disclosures amount to conclusions of law.  Thus, the Court denies Plaintiff's six requests for judicial notice.  (ECF No. 14.)

Accordingly, the DoD OIG's Report attached to Plaintiff's Complaint is incorporated by reference for the purposes of the Motion to Dismiss but limited to allegations of material fact, which excludes the OIG investigator's conclusory labels regarding "protected disclosures."

## II.   Plaintiff's Reports are Not Protected Disclosures.

Neither the Complaint nor reasonable inferences based on the alleged facts, *Iqbal*, 556 U.S. at 679, suggest the reported shove qualifies as a "gross mismanagement," "gross waste of . . . funds," or "abuse of authority" related to Valiant's Defense contract or a "substantial and specific danger to public health or safety."  10 U.S.C.A. § 2409(a)(1). Therefore, to survive the Motion, Plaintiff must plausibly show she reasonably believed the shove was "a *violation of law*, rule, or regulation *related to* [Valiant's] Department contract" and thus protected.  *Id.* (emphasis added).

### A.   The Alleged Shove Does Not Qualify as a Violation of Law Under §2409.

The first issue is whether Plaintiff reasonably believed the alleged shove and related facts, assumed true for the purposes of this motion, constituted a violation of law under the Act.  Plaintiff claims the shove constituted a criminal, simple assault under Title 18 and therefore satisfies Section 2409's violation of law requirement.   (Report at 23–24.) Defendant does not address whether the shove was a violation of law, focusing instead on the "related to" aspect of the statute.  (Reply at 5.)

Title 18 U.S.C., Chapter 7, Section 113(a)(5) states a "simple assault" "within the special maritime and territorial jurisdiction of the United States" is a criminal act punishable by fine or no more than a six-month imprisonment.  Absent a statutory definition under Section 113, courts adopted the common law definition, including "a willful attempt to inflict injury upon the person of another."  *United States v. Lewellyn*, 481

F.3d 695, 697 (9th Cir. 2007) (citing *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976)).  Further, "in a prosecution for simple assault under § 113(a)(5), it is sufficient to show that the defendant deliberately touched another in a patently offensive manner without justification or excuse." *Id*. at 698 (citing *United States v. Bayes*, 210 F.3d 64, 69 (1st Cir. 2000)).  Accordingly, the mens rea element requires intent to make contact and "[e]ven a seemingly slight, but intentional, offensive touching can suffice." *Id*.

In addition to whether the bare facts generally allege a plausible violation of law, the Court must consider legislative intent and whether "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions . . . evidence [a violation of law under § 2409]."  *Coons*, 383 F.3d at 890 (citing *Lachance*, 174 F.3d at 1381, for Whistleblowing Protection Act, 5 U.S.C.A. § 2302); *see also Dep't of Homeland Sec. v. MacLean,* 574 U.S. 383, 393 (2015) (finding "a broad interpretation of the word 'law' could defeat the purpose of the whistleblower statute" by altering the congress's intended scope).  As the Federal Circuit has repeatedly and persuasively reasoned, the nearly identical Whistleblower Protection Act "was enacted to protect employees who report genuine violations of law, not to encourage employees to report minor or inadvertent miscues occurring in the conscientious carrying out of a federal official or employee's assigned duties." *Langer v. Dep't of Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001) (citing *Herman v. Dep't of Justice*, 193 F.3d 1375, 1381 (Fed. Cir. 1999)).  Thus, "disclosures of trivial violations do not constitute protected disclosures." *El v. Merit Sys. Prot. Bd*., 663 F. App'x 921, 924 (Fed. Cir. 2016); *see e.g., Willis v. Dep't of Agric.*, 141 F.3d 1139, 1144 (Fed. Cir. 1998) ("[Not] every report by a government employee concerning the possible breach of law or regulation by a private party is a protected disclosure . . . [T]he WPA is intended to protect government employees who risk their own personal job security for the advancement of the public good.")

Here, applying the facts in a light most favorable to the nonmoving party, a factfinder might conclude the co-worker's intoxicated shove on the U.S. Embassy grounds

technically qualified as a violation of law under Title 18 U.S.C., Chapter 7, Section 11(a)(5). However, a "disinterested observer with knowledge [of the after-hours shove]," *Coons*, 383 F.3d at 890, could not reasonably conclude it evidenced a violation of law deserving whistleblower protection. *See Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157–58 (7th Cir. 2019) (voicing deep skepticism about how an assault described as a "bump" could be protected under Illinois's retaliation law and affirming dismissal on other grounds). Moreover, the Court would be remiss in recognizing the shove, which did not knock down or physically harm the Plaintiff, as rising to the level of a serious violation of law as contemplated by the Act's drafters. *See Sargent v. Pompeo*, No. 1:19-CV-00620 (CJN), 2020 WL 5505361, at *15 (D.D.C. Sept. 11, 2020) (Federal Contractor Whistleblower Protection Act, 41 U.S.C. § 4712) ("[To expand the reach of  § 4712, to encompass any misconduct or illegal discrimination occurring within the context of a federal contract [like the reported sexual harassment and discrimination] would stretch the statute's text beyond its plain meaning."); *Craine v. Nat'l Sci. Found.*, 687 F. App'x 682, 690 (10th Cir. 2017) (disclosing the belief a contract-funded manuscript was fraudulent was a "research error" and "not a statutory basis for protection" under § 4712).[7] Thus, reporting the shove was not a protected disclosure because Plaintiff could not have reasonably believed it was a violation of law warranting whistleblowing protection as envisioned by lawmakers.

## B. The Shove was Not "Related to" the Department Contract.

Even if the Court accepts Ms. Kappouta's Complaint as generally alleging a plausible violation of law, Plaintiff must also show the shove is plausibly *related to* the DoD contract such that her reports qualify as a protected disclosures under the Act. 10 U.S.C. § 2409(a)(1). Plaintiff claims the shove is related to Defendant's DoD Contract

---

[7]    41 U.S.C. § 4712 expanded the same whistleblower protection under § 2409 to all Federal contractor employees. *See Ficarra v. SourceAmerica*, No. 1:19-CV-01025, 2020 WL 1606396, at *3 (E.D. Va. Apr. 1, 2020) ("Both statutes aim to protect employees of federal contractors from retaliation by their employers when those employees have made disclosures of certain statutorily-defined information."). For example, § 4712(a)(1) disclosure protection mirrors § 2409(a)(1) except that it requires evidence related to *Federal* contracts rather than DoD or NASA contracts.

because a Federal Acquisition Regulation ("FAR") clause within the contract directs Valiant to "promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law." (FAR 52.203–13; Opp'n at 8.) Defendant rejects this argument, contending that, like *Lillie*, 2019 WL 3387732, at *18, the alleged misconduct is not actionable because "the violation was trivial and unrelated to the mission of the federal government." (Reply at 6.)

The Supreme Court has consistently held statutes should be construed as a whole, and "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (quoting *Burns v. Alcala*, 420 U.S. 575, 580–81 (1975)). Dictionary sources agree "related to" generally means a connection, link, or relationship between two or more things. *Ficarra*, 2020 WL 1606396, at *4 n. 2 (E.D. Va. Apr. 1, 2020) (citing three dictionary definitions and concluding "related to" means an association or connection between two or more things"). While case law interpreting the scope of "protected activity" under 10 U.S.C. § 2409 is limited, courts agree that for a protected whistleblowing disclosure to be "related to" a contract, it must have an "actual nexus," or connection, tethering it to the contract. *See Lillie*, 2019 WL 3387732, at 12, 16 (finding the False Claims Act, whose elements mirror § 2409, requires an "foreseeable nexus"); *Ficarra*, WL 1606396, at *4 ("[T]he 'related to' language in both § 2409 and § 4712 requires an actual nexus between a plaintiff's disclosure and a DoD, NASA, or federal contract.")

Here, there is no clear direct link between an after-hours shove involving two Valiant co-workers and Valiant's DoD contract. *Sargent*, 2020 WL 5505361, at *14 (holding reported sexual harassment and employment discrimination were internal events and unconnected to the Federal contract even if contract funds contributed to the accused's pay); *see also Ficarra,* WL 1606396, at *4 n. 6 (finding no "plausible inference" underreported non-governmental profits were protected because, although potentially illegal, they had no "actual nexus" with the DoD determination of the defendant's financial stability). Ms. Kappouta cites a Federal Acquisition Regulation (FAR) clause within

Valiant's DoD contract which includes a "Contractor Code of Business Ethics and Conduct." (FAR 52.203-13; Opp'n at 8.)   The FAR clause requires the contractor to "promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law" and disclose "credible evidence of a violation of federal criminal law involving fraud, conflict of interest, bribery or gratuity violations found in Title 18 of the U.S. Code; or a violation of the civil False Claims Act."  48 C.F.R. § 52.203-13. Acknowledging this, the OIG Report states, "the degree of the alleged assault in this case may *not require mandatory reporting* under *FAR* clause 52.203-13, but it is the type of 'improper conduct' for which . . . [Valiant]'s *internal* control system is implicated." (Report at 26.) (emphasis added).  Plaintiff's purported connection between the intoxicated shove and Defendant's DoD contract is a standardized clause broadly requiring the *promotion* of a company culture *encouraging* ethical conduct whose more stringent provisions were not triggered by Plaintiff's assault disclosure.  *See id.*; 48 C.F.R. § 52.203-13.  Aligning with the recent *Ficarra* and *Sargent* courts' reasoning that on-the-clock activities were unrelated to their respective government contracts, an intoxicated, after-hours shove between co-workers in a bar cannot reasonably be related to Valiant's DoD contract—even accounting for the FAR clause. *See Ficarra*, WL 1606396, at *5 (rejecting the plaintiff's argument a similar FAR clause connected under-reporting profits to the Defense contract); *Sargent*, 2020 WL 5505361, at *14–15.   In sum, the Court finds Plaintiff's co-worker's off-the-clock shove was not related to Valiant's Defense contract, nor could Plaintiff have reasonably believed it was.

As such, Plaintiff's related disclosures are not protected under 10 U.S.C.A. § 2409, and because all three prongs of a DCWPA claim require a protected disclosure, the Court need not address whether the Defendant was on notice or took adverse action in violation of the Act.

### III.   Leave to Amend.

Plaintiff request leave to amend, but Defendant claims any amendment would be futile.  (Opp'n 13–14; Reply at 9–10.)   "The standard for granting leave to amend is

generous." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 969, 701 (9th Cir. 1988)); *but see Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("leave to amend is not to be granted automatically.")  The court considers five factors in assessing the appropriateness of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Here, there is no evidence of delay, prejudice, bad faith, or previous amendments, so leave to amend turns on whether amendment would be futile.

For futility, "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (internal citation and quotation marks omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks and citation omitted)); *Balistreri*, 901 F.2d at 701 (noting that leave to amend should be granted when a court can "conceive of facts" that would render the plaintiff's claim viable).  Thus, "[l]eave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *Corinthian Colleges*, 655 F.3d at 995 (9th Cir. 2011) (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)).

Here, Plaintiff never amended her original Complaint.  While future amendment attempts may very well prove to be futile, the Court acknowledges the clear judicial preference for liberally granting leave to amend under circumstances such as those present here. *See e.g., Disney Enterprises, Inc. v. Vidangel, Inc.*, 734 F. App'x 522, 524 (9th Cir. 2018) (upholding dismissal with prejudice of a first amended complaint as incurable); *Ficarra*, WL 1606396, at *6 (dismissing with prejudice as futile after the plaintiff's third

attempt to prove his profit underreporting disclosures were protected whistleblowing disclosures).  Therefore, the Court **GRANTS** Plaintiff leave to amend.

**CONCLUSION**

Considering the foregoing, the Court **GRANTS** Defendant Valiant Integrated Services, LLC's Motion to Dismiss (ECF No. 7) and **DISMISSES WITHOUT PEJUDICE** Plaintiff's Complaint (ECF No. 1).

**IT IS SO ORDERED.**

Dated:  October 14, 2021

Honorable Todd W. Robinson
United States District Judge

20-CV-1501 TWR (BGS)